IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                          No. CR 19-4459 JB

CHRISTHIAN IBARRA-QUINTERO,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Christhian Ibarra-Quintero's Sentencing Memorandum and Motion for a Variance, filed November 22, 2021 (Doc. 65)("Objection"). The Court held a hearing on February 2, 2022. See Order, filed January 7, 2022 (Doc. 70). The primary issue is whether the Court should apply United States Sentencing Guidelines ("U.S.S.G.") § 3B1.2's 2-level sentencing reduction, because Ibarra-Quintero played a minor role in a drug conspiracy. The Court concludes that Ibarra-Quintero did not play a minor role in the drug conspiracy, because Ibarra-Quintero played a substantial role in the drug-trafficking enterprise by coordinating the distribution of drugs and drug money, and has substantial knowledge of the drug-trafficking enterprise. Accordingly, the Court will not apply U.S.S.G.'s § 3B1.2's 2-level sentencing reduction.

## FACTUAL BACKGROUND

The Court takes its facts from the Presentence Investigation Report, filed October 12, 2021 (Doc. 60)("PSR"), the Objection, and the Addendum to the Presentence Investigation Report, filed December 12, 2021 (Doc. 67)("Addendum"). The Court makes its findings of fact by a preponderance of the evidence. United States v. Williams, No. CR. 17-2556 JB, 2020 WL 4016108, at *6 (D.N.M. July 16, 2020)(Browning, J.)(citing United States v. Olsen, 519 F.3d 1096,

1105 (10th Cir. 2008)).  Accord United States v. Zapata, 546 F.3d 1179, 1192 (10th Cir. 2008).

The Court may rely on hearsay if the hearsay is reliable.[1]  See United States v. Banda, 168 F. App'x

284, 289 (10th Cir. 2006)(unpublished)("[T]here is no prohibition on considering hearsay

testimony at sentencing, provided it bears indicia of reliability.").[2]  The evidence and information

_____

[1]In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the introduction of testimonial hearsay statements from witnesses not subjected to cross examination at trial violates a defendant's Sixth Amendment confrontation right.  See Crawford v. Washington, 541 U.S. at 68-69.  There is no binding precedent from the Supreme Court of the United States of America or from the United States Court of Appeals for the Tenth Circuit concerning whether Crawford v. Washington applies to proceedings outside of the trial context.  The Tenth Circuit has indicated in unpublished caselaw that Crawford v. Washington does not bar hearsay statements at a suppression hearing.   In United States v. Ramirez, 388 F. App'x 807, 810 (10th Cir. 2010)(unpublished), the Tenth Circuit notes:

> It is beyond reasonable debate that Ramirez's counsel were not ineffective in failing to make a Confrontation Clause challenge to the use of the confidential informant.  The Supreme Court has not yet indicated whether the Confrontation Clause applies to hearsay statements made in suppression hearings. See United States v. Garcia, 324 Fed. App'x. 705, 708 (10th Cir. [2009]), cert. denied, [558] U.S. [890] . . . (2009)(collecting cases).  Nonetheless, even if we assume that the Confrontation Clause applies to the hearings at issue here, the admission of the confidential informant's statements was harmless.

388 F. App'x at 810 (10th Cir. 2010).  Moreover, based on the same reasoning as the Tenth Circuit in United States v. Ramirez, the Court has concluded that hearsay statements are admissible in a detention hearing.  See United States v. Hernandez, 778 F. Supp. 2d 1211, 1227 (D.N.M. 2011)(Browning, J.)("Before Crawford v. Washington, courts held that the Confrontation Clause did not attach to detention hearings. Nothing in the Supreme Court's opinion in Crawford v. Washington undermines those holdings. Moreover, what authority exists after Crawford v. Washington rejects the proposition that Crawford v. Washington applies outside of trial.").  Moreover, other United States Courts of Appeals that have addressed this question have held that hearsay evidence's introduction at pre-trial proceedings does not violate the Confrontation Clause. See Peterson v. California, 604 F.3d 1166 (9th Cir. 2010)(concluding that the admission of hearsay evidence at a preliminary hearing does not violate the Confrontation Clause because the right to confrontation is a trial right).  See also United States v. Mitchell-Hunter, 664 F.3d 45, 52 (1st Cir. 2011)(holding that the defendant did not have a confrontation right in a pretrial jurisdictional hearing).

[2]United States v. Banda is an unpublished opinion, but the Court can rely on a United States Court of Appeals for the Tenth Circuit unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not

upon which the Court relies must have sufficient indicia of reliability.  See U.S.S.G. § 6A1.3 ("In

resolving any dispute concerning a factor important to the sentencing determination, the court may

consider relevant information without regard to its admissibility under the rules of evidence

applicable at trial, provided that the information has sufficient indicia of reliability to support its

probable accuracy.").

1.      Drug Enforcement Agency ("DEA") agents began to surveil Hector Aaron

Hernandez-Marentes after they discovered that he supplied drugs to Juan Gaytan-Payan.  PSR

¶ 10, at 5.

2.      In February, 2019, undercover DEA special agents contacted Hernandez-Marentes

to arrange to buy one pound of methamphetamine for $2,650.00.  See PSR ¶ 10, at 5.

3.      On February 7, 2019, an undercover DEA agent called Hernandez-Marentes to

coordinate a pickup location for the methamphetamine.  See PSR ¶ 10, at 5.

4.      DEA agents surveilling Hernandez-Marentes' house watched him leave in a

minivan registered to Ibarra-Quintero, also known as "Chino," to meet the undercover DEA agent

in a Target parking lot in Albuquerque, New Mexico.  PSR ¶ 10, at 5.

5.      In the Target parking lot, the undercover DEA agent met Hernandez-Marentes and

---

precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent . . . and we have
> generally determined that citation to unpublished opinions is not favored.
> However, if an unpublished opinion or order and judgment has persuasive value
> with respect to a material issue in a case and would assist the court in its disposition,
> we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United
States v. Banda and United States v. Ramirez, 388 F. App'x 807, 810 (10th Cir.
2010)(unpublished), have persuasive value with respect to a material issue, and will assist the
Court in its disposition of this Memorandum Opinion and Order.

exchanged 444 grams of methamphetamine (actual weight) for $2,650.00.  See PSR ¶ 10, at 5.

6.      Between July, 2019, and September, 2019, Ibarra-Quintero and Hernandez-Marentes exchanged telephone calls and text messages, in which they discussed conspiring to obtain and distribute methamphetamine in Albuquerque.  See PSR ¶ 11, at 5.

7.      Ibarra-Quintero and Hernandez-Marentes exchanged coded messages about methamphetamine, including using the words "gasoline" and "tools" when referring to methamphetamine.  PSR ¶ 11, at 5.

8.      Ibarra-Quintero and Hernandez-Marentes exchanged messages about delivering drug proceedings to Jose Mario Coria-Coria, who is also known as "Taliban" or "Tali."  PSR ¶ 11, at 5.

9.      Ibarra-Quintero and Hernandez-Marentes exchanged messages about Ibarra-Quintero wiring money.  See PSR ¶ 11, at 5.

10.     On July 15, 2019, Coria-Coria instructed Hernandez-Marentes to "have 'that'" ready later, referring to methamphetamine, and informed Hernandez-Marentes that he was working in Santa Fe, New Mexico, but would "call Hernandez-Marentes to 'finish that over there.'"  PSR ¶ 12, at 5.

11.     Hernandez-Marentes and Coria-Coria tried without success to coordinate a meeting point.  See PSR ¶ 12, at 5.

12.     Hernandez-Marentes then called Ibarra-Quintero to tell him that Coria-Coria "'did not complete the 17,'" meaning selling seventeen grams of methamphetamine.  PSR ¶ 12, at 5 (no citation for quotation).

13.     Hernandez-Marentes sent Ibarra-Quintero a photograph of a grocery bag weighing 16.9 grams on a scale; Ibarra-Quintero responded saying that he would help Hernandez-Marentes

with "'21,'" meaning twenty-one grams of methamphetamine.  PSR ¶ 12, at 5.

14.     Coria-Coria told Hernandez-Marentes in a telephone call to "get that material ready now . . . for that job" and discussed getting money from Ibarra-Quintero for "the gas."  PSR ¶ 12, at 5.

15.     Associates of an unidentified person ("UNK-1") supplied drugs, including methamphetamine, to Ibarra-Quintero to sell.  PSR ¶ 13, at 5.

16.     In July, 2019, UNK-1 and two others "used mass transportation to travel from Phoenix, Arizona, to Albuquerque," intending to deliver 5.5 kilograms of methamphetamine to Ibarra-Quintero, but DEA agents seized it before UNK-1 could deliver it.  PSR ¶ 13, at 5.

17.     The 5.5 kilograms of methamphetamine was ninety-five percent pure, meaning that, after deducting five percent for packaging, it contained 5.009 kilograms of pure methamphetamine.  See PSR ¶ 13, at 5.

18.     Ibarra-Quintero and UNK-1 planned to give someone else the proceeds from the drug sales "once everything was dispersed."  PSR ¶ 13, at 5.

19.     "[M]oney had previously been picked up from 'the shop,' which was identified as Ibarra-Quintero's residence, a house attached to a shop," although Ibarra-Quintero does not own the house.  PSR ¶ 13, at 5.

20.     An unidentified person accompanied Ibarra-Quintero to the "Ranch Market" to send money to an unknown person.  PSR ¶ 14, at 5.

21.     After Ibarra-Quintero and the unknown person sent the money, Ibarra-Quintero and UNK-1 retrieved a gift bag containing methamphetamine from Ibarra-Quintero's house and delivered it to an unknown man.  See PSR ¶ 14, at 5.

22.     UNK-1 was "babysitting" Ibarra-Quintero to ensure that Ibarra-Quintero did not

tamper with the drug payment.  PSR ¶ 14, at 5.

23.     That same day, UNK-1 and Ibarra-Quintero "joined Hernandez-Marentes to deliver approximately one kilogram of methamphetamine to Coria-Coria."  PSR ¶ 14, at 5.

24.     Rodolfo Dibene-Saavedra crossed into the United States from Nogales, Arizona, four times between March 16, 2018, and July 20, 2019; Dibene-Saavedra crossed a fifth time in July 21, 2019.  See PSR ¶ 15, at 5.

25.     On July 24, 2019, Ibarra-Quintero, Dibene-Saavedra, and Domingo Aguilar, also known as "Mingo," smelled strongly of marijuana at the Coronado Mall in Albuquerque, New Mexico.  PSR ¶ 15, at 5.

26.     Domingo Aguilar is one of Ibarra-Quintero's friends and had recently obtained 20,000 acres of land in Mexico.  See PSR ¶ 15, at 5.

**IT IS ORDERED** that, for the reasons stated on the record at the February 2, 2022, hearing, the Court overrules the Objection in Defendant Christian Ibarra-Quintero's Sentencing Memorandum and Motion for a Variance, filed November 22, 2021 (Doc. 65), is overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Fred J. Federici
  Acting United States Attorney
Kristopher N. Houghton
Mark Christian Pfizenmayer
  Assistant United States Attorneys
United State Attorney's Office
Albuquerque, New Mexico

- 7 -

*Attorneys for the Plaintiff*

Joseph E. Shattuck
Marco Shattuck Law Firm
Scottsdale, Arizona

*Attorneys for the Defendant*